543 So.2d 101 (1989)
STATE of Louisiana, Appellee,
v.
Mark HEACOX, Appellant.
No. CR88-336.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
*102 Glen Cortello, Alexandria, for defendant-appellant.
Thomas Yeager, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before FORET, DOUCET and YELVERTON, JJ.
FORET, Judge.
On January 3, 1986, appellant, Mark Heacox, was indicted by a grand jury on two counts of second offense distribution of marijuana in violation of La.R.S. 40:966(A)(1) and 40:982, and a single count of illegal possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. On January 23, 1987, Heacox was found guilty as charged on all counts by a twelve-person jury. At sentencing, appellant was ordered to serve three years without benefit of parole, probation, or suspension of sentence and to pay a fine of $1,500 on the firearm charge. Heacox was sentenced to serve a concurrent four-year term of imprisonment on one marijuana distribution conviction and a consecutive three-year term on the other. Appellant seeks review of his conviction based on six assignments of error.

FACTS
On August 21, 1985, Travis Wiley, an undercover state police officer, was contacted by an informant and advised that Ben Hunt was selling marijuana in Rapides Parish. The informant arranged for Wiley to meet Hunt and purchase marijuana. At about 8:45 P.M., Wiley, accompanied by the informant, proceeded to the Coliseum and met three individuals who were standing beside a pickup truck. The suspected dealer, Ben Hunt, walked to the agent's vehicle, approached the driver's side, and produced a bag of marijuana weighing approximately one-quarter pound. Hunt handed the marijuana directly to the agent while Jerry Willett and Heacox remained standing at the front of Hunt's vehicle, looking around the area. When a vehicle with uniformed officers approached the area, one of the persons at the scene alerted the others. Heacox then walked to the agent's vehicle, shut the door, and informed the *103 agent that he should leave the area. The parties met at a second location where the agent paid Hunt $225.00 for the marijuana.
On October 10, 1985, the informant set up another narcotics sale. At about 3:45 P.M., the agent, accompanied by the informant, met Heacox and Willet in the parking lot of a supermarket. Heacox was in the passenger seat of Willet's pickup. The agent approached the passenger side and inquired whether Heacox had marijuana to sell. In response, Heacox removed a bag of marijuana from the glove box, informed the agent the bag contained three-quarters of an ounce of quality marijuana, instructed the agent to smell it, and finally handed the bag to the agent. Heacox was handed $85.00 as payment for the marijuana. While the exchange was taking place, the officer observed a partially covered handgun on the seat of Willet's vehicle, located between Heacox and Willet.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, Heacox contends the trial court committed reversible error by denying his motion for a continuance based on the absence of a witness whose testimony would tend to exculpate him. He argues that the testimony of the witness would have established his lack of knowledge that marijuana was to be distributed to the agent and also prove that he never had actual or constructive possession of a firearm. Finally, Heacox alleges the trial court's ruling acted to deprive him of the right to compulsory process.
"A motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor." La.C.Cr.P. art. 712. When a motion for continuance is based on the absence of a material witness, and the adverse party admits that if the witness were present he would testify as stated in the motion, the court may proceed to trial. If the court is of the opinion that despite the admission, the case cannot be tried with justice to the applicant, it may require the adverse party to admit the truth of the testimony. La.C.Cr.P. art. 710. The denial of a continuance does not constitute reversible error absent an abuse of discretion and a showing of specific prejudice. See, State v. Schrader, 518 So.2d 1024 (La.1988). Whether a refusal to grant a continuance was justified primarily depends on the circumstances of a particular case. See, State v. Winston, 327 So.2d 380, 382 (La. 1976).
Prior to trial, defense counsel filed for a continuance based on the absence of an essential witness, Jerry Willet. In response, the prosecutor agreed to stipulate that if Willet were present he would testify that he and Hunt sold the marijuana to the narcotics agent without involvement or knowledge by Heacox and that Heacox was merely present when the transaction occurred. The stipulation also acknowledged that Willet was on probation for distribution of controlled substances. The stipulation was presented to the jury by defense counsel.
La.C.Cr.P. art. 709 mandates that a written motion for continuance contain facts about which the absent witness is expected to testify. The motion filed in the instant case did not meet these guidelines. However, it is apparent from the appellate transcript that the witness was sought to testify regarding appellant's non-involvement in or lack of knowledge of the two marijuana sales. The stipulation by the State allowed for this testimony to be introduced notwithstanding the absence of the witness.
Assuming the witness would also have testified that Heacox did not own and had not touched the gun in the pickup, the denial of a continuance to secure such testimony did not result in specific prejudice. Travis Wiley's testimony revealed that Willet had indicated that the gun belonged to his mother. Wiley also testified that Heacox had not touched the gun at any time during the October 10, 1985 transaction.
The trial court's denial of a continuance under the circumstances of this case does not constitute an abuse of discretion nor has Heacox suffered prejudice by the denial. Finally, Heacox's claim that the court's ruling operates to deny the constitutional right to compulsory process has no merit. See State v. Burns, 504 So.2d 124 (La.App. *104 2 Cir.1987), writ denied, 505 So.2d 1142 (La.1987).

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, Heacox contests the sufficiency of evidence to convict on each of the three charges. As to the marijuana distribution convictions, Heacox argues the State failed to establish guilt as a principal on the first charge or guilty knowledge on either of the two counts. Heacox also argues that the evidence produced at trial fails to establish either real or constructive possession of the firearm.[1]
Under the standard set forth by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), when reviewing the sufficiency of the evidence to support a conviction, an appellate court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant to have committed the essential elements of the crime beyond a reasonable doubt. Where a case is based upon circumstantial evidence, the conviction will be upheld if, assuming every fact to be proved that the evidence tends to prove, every reasonable hypothesis of innocence has been excluded. La.R.S. 15:438. The statutory rule as to circumstantial evidence is neither a separate nor stricter standard of review than Jackson but merely provides a helpful methodology for review of cases involving circumstantial evidence. State v. Bailey, 511 So.2d 1248 (La.App. 2 Cir.1987), writ denied, 519 So.2d 132 (La. 1988); State v. Freeman, 506 So.2d 519 (La.App. 1 Cir.1987). "Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden." State v. Garcia, 483 So.2d 953, 956 (La.1986).

COUNT 1
By this count, the State charged Heacox with knowingly and intentionally distributing marijuana, second offense. This conviction is based on the August 21, 1985 transaction. The State prosecuted Heacox as a principal. In order to sustain the conviction, the State need not prove that Heacox physically possessed or delivered the marijuana. State v. Bernard, 441 So.2d 817 (La.App. 3 Cir.1983), writ denied, 445 So.2d 439 (La.1984). However, the State must establish that Heacox aided or abetted in the marijuana sale pursuant to La.R.S. 14:24.
At trial, the narcotics agent, Wiley, testified that Heacox stood beside Ben Hunt's vehicle while Hunt was delivering the bag containing marijuana. He continued his testimony by stating: "I observed Mark Heacox, as he got out of the truck, he stood by the right front fender of the gray pickup truck, and he was constantly surveilling.. uh .. the area." Wiley also testified that "Mark Heacox was standing near the left ... uh ... the right front fender of the truck and then he would walk around after the transaction started." When asked where Jerry Willet, the third person in Ben Hunt's pickup, was, Wiley testified that, "[h]e was just standing up there, you know. He was probably looking around too, you know."[2]
This is the sole evidence offered by the State in support of its proposition that Heacox was acting as a "lookout" and therefore, aiding and abetting the exchange of marijuana.
In furtherance of this charge, the State attempted to show that Heacox had warned the others that the police were approaching when he shut the door on Wiley's vehicle and stated, "I think it's time for you to leave." However, when Wiley was questioned *105 as to who warned that the police were coming, Wiley replied that he did not recall and added further: "I may have said it, you know, I ... I may have said it to make it look good, you know."
Jerry Willet, through stipulation, testified that Heacox did not have any knowledge of the transaction and was merely present when the offense occurred.
Ben Hunt testified at trial that he did not believe Mark knew what was going on "until he turned around and there was cops."
The evidence does not prove beyond a reasonable doubt that Heacox warned the others that the police were coming. Under the mandate of La.R.S. 15:438, we do not find that the evidence excludes every reasonable hypothesis of innocence. The evidence, admitted at trial, showed that Heacox had been placed on three years' probation on August 12, 1985, approximately nine days before this transaction. It would be reasonable for Heacox to close Wiley's automobile door and tell Wiley he thought he should leave when the police arrived if he was acting out of his own reluctance to be involved in the transaction. At the time Heacox told Wiley to leave, he, in fact, interrupted the transaction insofar as Hunt had not yet received any money for the sale.
Under Jackson, we do not find the evidence sufficient to satisfy a rational juror that Heacox is guilty beyond a reasonable doubt of acting as a "lookout" and/or warning the others regarding the arrival of the police. Thus, we reverse Heacox's conviction and sentence as to the charge of second offense distribution of marijuana for the transaction occurring on August 21, 1985.[3]

COUNT 2
As to count 2, involving the October 10, 1985 transaction, Wiley testified that Heacox took the marijuana from the glove compartment, informed the prospective buyer of its quality, instructed the agent to smell that marijuana, and handed the marijuana to the agent. Heacox was then handed $85.00 by Wiley in exchange for the marijuana. The stipulation entered into the record, as to Willet's testimony, that Heacox "had no prior knowledge of the offense ... and was only present" when the offense occurred does not dispel the overwhelming evidence that Heacox played an active role in this transaction. The evidence, viewed in the light most favorable to the prosecution, was sufficient to justify a rational trier of fact in concluding that Heacox knowingly and intentionally distributed marijuana, contrary to La.R.S. 40:966(A)(1). Thus, we affirm Heacox's conviction and sentence of four years at hard labor.

COUNT 3
As to the charge of possession of a firearm by a convicted felon, Heacox argues that the evidence produced at trial was insufficient to establish his actual or constructive possession of the gun observed by Wiley during the October 10, 1985 transaction.
Wiley testified that he observed a gun on the seat of Willet's pickup truck, equidistant between Willet and Heacox. The gun was in a holster with a strap across the gun. It was partially covered with only the handle revealed. The pickup truck belonged to Willet and was being driven by Willet. Neither Willet nor Heacox touched the gun during the October 10, 1985 transaction. The gun was seized from Willet's home and it was indicated to Wiley that the gun belonged to Willet's mother. Wiley stated that the gun was seized from Willet because it was in Willet's vehicle.
La.R.S. 14:95.1 makes unlawful possession of a firearm by enumerated felons. "Constructive" possession of a firearm by a convicted felon is sufficient to support a finding of guilt. State v. Day, 410 So.2d 741 (La.1982). Mere presence in an area where contraband is found or mere association with an individual found to be in possession of such does not necessarily establish *106 possession. State v. Viera, 449 So.2d 644 (La.App. 4 Cir.1984), writ denied, 450 So.2d 962 (La.1984). However, an individual found in close proximity to an area where contraband is located may be considered in constructive possession if the contraband is subject to his dominion and control. The determination of whether there is "possession" sufficient to convict depends on the particular facts of the case. State v. Walker, 514 So.2d 602 (La.App. 4 Cir.1987); State v. Trahan, 425 So.2d 1222 (La.1983).
We find that, under Jackson v. Virginia, the evidence is insufficient to find that the gun was subject to Heacox's dominion and control. There was no evidence that Heacox was aware of the presence of the gun. Alternatively, if he was aware of the gun's presence, there is no evidence that Heacox's intent amounted to an intent to possess rather than mere acquiescence to the fact that Willet had a gun in his truck. The gun was not found on his person or found in or on property over which he had dominion and control. There was no evidence that he had been seen with the weapon or that he touched the weapon during the October 10, 1985 transaction.[4] Therefore, the evidence falls short of proving beyond a reasonable doubt that Heacox was in constructive possession of the weapon.
It is noteworthy that the State did not call Jerry Willet as a witness or join in Heacox's motion for continuance when it was discovered that Willet's plane would be delayed. It would appear that Willet would have knowledge as to who originally placed the gun in his truck, whether Heacox was aware that the gun was in Willet's truck, and whether Heacox shared dominion and control over the weapon. We do not find that the State carried its burden of proving that Heacox was in possession of the gun and, as such, we reverse the conviction for possession of a firearm by a convicted felon.

ASSIGNMENT OF ERROR NOS. 3 & 4
By these assignments of error, Heacox alleges the trial court improperly made an inference to the jury as to what was proved at trial when he attempted to clarify jury instructions and modified the verdict form.
At trial, the judge presented the jurors with a form containing the following potential verdicts on the marijuana distribution counts:
1. Guilty
2. Guilty of Attempted Distribution of Marijuana, Second Offense
3. Guilty of Distribution of Marijuana, First Offense
4. Guilty of Possession of Marijuana
5. Guilty of Attempted Possession of Marijuana
6. Not Guilty
After retiring to deliberate, the jury returned to court for clarification of the meaning of attempt. The court read La. R.S. 14:27 to the jury, after which the jury then sought instructions "in laymen's terms." In response, the court essentially reread the statute and informed the jury as follows:
"In order to convict the defendant of attempted distribution of marijuana, whether it be second offense, or first offense or attempt to commit one or any other lesser offense ... responsive offense, you must find that the defendant had a specific intent to commit the crime, and that he did or omitted an act for the purpose of and tending directly toward the commission of that crime."
The judge asked whether any further instructions were needed. The jury sought *107 none. The trial judge returned the verdict forms to which he had added the missing responsive verdict of attempted distribution of marijuana, first offense.
"If the jury or any member thereof, after having retired to deliberate upon the verdict, desires further charges, the officer in charge shall bring the jury into the courtroom, and the court shall in the presence of the defendant, his counsel, and the district attorney, further charge the jury. The further charge may be verbal."
La.C.Cr.P. art. 808.
The court may recharge the jury, or explain his charge in greater detail upon jury request, provided the court does not misstate the law. See State v. Williams, 464 So.2d 1058 (La.App. 1 Cir.1985), writ denied, 468 So.2d 571 (La.1985); State v. Ducksworth, 496 So.2d 624 (La.App. 1 Cir. 1986). At no time during a trial should the trial judge comment upon the facts of the case by giving an opinion as to what has been proven, not proven, or refuted. La.C. Cr.P. art. 772, 806. The purpose of these articles is to prevent the trial judge from prejudicing a defendant by giving the jury an impression of judicial partiality. Therefore, the court may not express an opinion as to guilt or innocence. See State v. Johnson, 438 So.2d 1091 (La.1983); State v. Roberson, 445 So.2d 12 (La.App. 4 Cir. 1983), writ denied, 449 So.2d 1344 (La. 1984). The article does not prevent the trial judge from clarifying matters where necessary if such can be accomplished without commenting or giving an opinion as to defendant's guilt or innocence. State v. Roberson, supra.
In the instant case, the trial judge chose to recharge the jury by repeating the statutory definition of attempt and summarizing the meaning of the statute. These instructions represent an accurate statement of the law and did not mislead the jury.
In correcting the responsive verdict form, the judge merely added a potential responsive verdict which was not included on the original form. The record does not support Heacox's claim that the trial judge inferred guilt by failing to include "not guilty" as a responsive verdict. Indeed, the trial judge verbally informed the jury that "not guilty" was a possible verdict and "not guilty" remained on the jury's responsive verdict list. The trial judge properly took action to ensure that the jury was aware of all potential verdicts before reaching a final verdict. The clarification may in no way be construed as an expression of opinion as to Heacox's guilt or innocence. The judge's action did not adversely influence or prejudice the jury against Heacox and cannot be considered reversible error. See State v. Johnson, supra. Therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
By this assignment of error, Heacox argues that the polling of the jury fails to establish the jury voted to convict him on each count. Appellant argues that an inaudible response by one juror and a statement by another concerning an inability to recall how he voted on a particular count demonstrates sufficient confusion as to the jury's true intention to warrant reversal of the conviction.
At the request of either the state or the defendant, the court shall order the clerk to poll the jury.
"If, upon polling all of the jurors, the number of jurors required by law to find a verdict answer `Yes,' the court shall order the clerk to record the verdict and the jury shall be discharged. If, upon polling all of the jurors, the number required to find a verdict do not answer `Yes,' the jury may be remanded for further deliberation, or the court may declare a mistrial in accordance with Article 775."
La.C.Cr.P. art. 812.
In the instant case, each of Heacox's charges carried sentences in which punishment is necessarily confinement at hard labor. Therefore, in order to support a conviction, ten persons of a jury composed of twelve must find the defendant guilty. La.C.Cr.P. art. 782. The polling of the jury in the instant case clearly establishes that at least ten jurors voted to convict Heacox on each charge. On the first marijuana distribution verdict, one juror voted against *108 conviction, one expressed uncertainty as to his vote, and ten other jurors voted to convict. As to count two, although the clerk stated that the tally was unanimous, eleven jurors voted to convict and the response of the twelfth was inaudible. On count three, polling likewise established ten jurors voted to find Heacox guilty. Therefore, despite one juror's confusion as to his verdict on the first count, the trial judge did not err in ordering the clerk to record guilty verdicts on all three counts.
For the reasons stated, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
By this assignment of error, Heacox contends he was denied effective assistance of counsel at trial. Heacox asserts numerous instances where trial counsel allegedly failed to meet a level of competency normally expected of attorneys in criminal cases and argues that each instance acts to undermine confidence in the outcome of the case.
A claim of ineffective assistance of counsel is properly raised in a petition for post-conviction relief. Where, however, the record contains evidence necessary to decide the issue and the alleged ineffectiveness is raised on appeal by an assignment of error, the issue should be considered. See State v. Seiss, 428 So.2d 444 (La.1983); State v. Tolliver, 464 So.2d 1088 (La.App. 1 Cir.1985). In reviewing a claim of ineffective assistance of counsel, a court should inquire whether counsel violated some duty to the client and whether the defendant was prejudiced in the case by such alleged violation. "Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact" which must be analyzed to determine if the trial can be relied on as having produced a just result. Strickland v. Washington, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984).
"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695, 104 S.Ct. at 2069. In the instant case, Heacox's designation of the record inexplicably failed to request portions of the trial transcript containing his testimony, the testimony of the informant, and a drug analyst. The failure to request the full transcript appears to prevent an effective and complete review of this issue on appeal. The necessary inquiry of mixed questions of law and fact will more properly be handled through a petition for post-conviction relief.
Therefore, this assignment of error will not be considered in this appeal.

DECREE
For the reasons assigned, Heacox's convictions and sentences as to Count I and Count III are reversed. Heacox's conviction and sentence as to Count II of four years at hard labor are affirmed.
REVERSED IN PART; AFFIRMED IN PART.
YELVERTON, J., dissents in part and assigns written reasons.
YELVERTON, Judge, dissenting.
It is my opinion that the facts and circumstances in this case indicate that Heacox had constructive possession of the firearm as held by the trial judge. Therefore, I respectfully dissent from the majority in concluding that there has been no violation of La.R.S. 14:95.1.
The elements of possession of a firearm by a convicted felon are: 1) status of the defendant as a convicted felon, 2) an instrumentality defined as a firearm, and 3) physical and/or constructive possession of the firearm by the defendant. State v. Brooks, 496 So.2d 1208 (La.App. 5th Cir. 1986). Violation of R.S. 14:95.1 requires only general criminal intent. State v. Hills, 451 So.2d 1346 (La.App. 1 Cir.1984).
The applicable standard to apply when determining whether the evidence in a given case is sufficient to convict a defendant of an offense is whether a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt, that the defendant was in possession of the *109 firearm. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The testimony in the record establishes that Officer Wiley observed a target pistol in Willet's pickup truck located on the seat an equal distance between Willet and Heacox. He also observed that the gun was partly covered by what appeared to be a shirt. The gun was clearly visible, however, as Wiley saw the gun itself, part of the holster, and a multicolored cloth band that was probably used as a belt for the holster. Wiley testified that there was nothing to interfere with either of the occupants of the vehicle having easy access to the gun.
The gun belonged to Willet's mother. Willet told Officer Wiley that this was a target pistol that he and Heacox had used to target practice. This shows that Heacox had had some prior experience with this gun.
The testimony of Wiley further establishes that unlike the first drug transaction that occurred, the second transaction, October 10, 1985, was set up by Smith, the undercover policeman, and Heacox. During the transaction, Heacox retrieved the marijuana from the glove compartment to give to Wiley. These circumstances indicate that Heacox was in control of the transaction.
The majority found that neither Willet nor Heacox touched the gun during the October 10, 1985, transaction. Whether the defendant touched the gun or not is of no significance. Constructive possession exists when the contraband is subject to the defendant's dominion and control. State v. Trahan, 425 So.2d 1222 (La.1983). All Heacox had to do to get the gun was put his hand over and pick it up. Physical contact with the gun is not required.
The majority also determined that there was no evidence that Heacox was aware of the gun's presence. Such an inference is a strained one. From outside of Willet's truck, Wiley could see not only part of the gun and holster, but also the multicolored belt attached to the gun. The gun was on the seat between the two occupants. It was put on the seat by either Willet or Heacox, or it was already on the seat when Heacox got in the truck and sat down. It is hard to believe that Heacox was unaware of its presence. The Jackson v. Virginia standard of review is not served by substituting an improbable inference for the trial court's circumstantially supported finding of fact. From the evidence presented at the trial on the merits, I find the trial court was correct in concluding that Heacox had constructive possession of the gun.
I agree with the rest of the opinion.
NOTES
[1] At trial, the State established the predicate felony controlled substances conviction through the testimony of the parole officer assigned to supervise Heacox. This witness identified Heacox as the same person he supervised after a March 29, 1985 conviction for distribution of controlled substances. Additionally, the State offered court minutes exhibiting the prior conviction and sentence. For these reasons, it appears this portion of the State's burden of proof has been satisfied on the charge of illegal possession of a firearm by a convicted felon.
[2] Trooper Wiley testified that he did not request an arrest warrant for Willet in regard to this incident because he did not play an active role.
[3] For cases wherein the evidence was held sufficient to sustain a conviction for aiding and abetting under La.R.S. 14:24, see State v. McCullough, 503 So.2d 1194 (La.App. 3 Cir.1987); State v. Bernard, supra; State v. Hutchins, 502 So.2d 606 (La.App. 3 Cir.1987).
[4] For cases wherein the evidence was held sufficient to sustain a conviction under La.R.S. 14:95.1, illegal possession of a firearm by a convicted felon, see State v. Ebey, 491 So.2d 498 (La.App. 3 Cir.1986) (weapon seen at defendant's residence); State v. Goldsmith, 519 So.2d 299 (La.App. 2 Cir.1988) (physical possession); State v. Bailey, 511 So.2d 1248 (La.App. 2 Cir. 1987), writ denied, 519 So.2d 132 (La.1988) (owner of guns and part owner of vehicle where guns were found, driver of vehicle); State v. Catchings, 440 So.2d 153 (La.App. 4 Cir. 1983); State v. Hills, 451 So.2d 1346 (La.App. 1 Cir. 1984), vacated in part on other grounds, 457 So.2d 1183 (La.1984) (weapon found in vehicle of another over which defendant had dominion and control); State v. Bell, 439 So.2d 1163 (La. App. 4 Cir.1983) (defendant seen with weapon).